

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00041-CR

JESSICA BRIGGLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 23274

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Following her plea of guilty to four counts of forgery of a financial instrument, the trial court placed Jessica Briggle on deferred adjudication community supervision (community supervision) for a period of three years.[1] After the trial court had modified the conditions of Briggle's community supervision on several occasions, the State filed a motion to proceed with adjudication of guilt. Briggle appeals the trial court's subsequent revocation of her community supervision and adjudication of guilt. Briggle contends that the evidence is insufficient to prove the allegations in the State's application to proceed to adjudication and that the trial court erred when it revoked her community supervision.

We find that the evidence was sufficient to support the trial court's conclusion that Briggle violated a condition of her deferred adjudication community supervision. Consequently, we affirm the trial court's judgment.

I.      Factual Background and Briggle's Community Supervision History

On February 19, 2010, the trial court deferred adjudication of Briggle's criminal charges and placed her on community supervision. In addition to numerous standard conditions of community supervision, the trial court's order required Briggle to pay restitution in full at the time she entered her plea, report in person to the Lamar County Community Supervision and Corrections Department, and abstain from drugs and alcohol. In addition, the trial court ordered Briggle to submit to "any type of drug test" to determine if she had been using "any illegal

---

[1]The trial court entered a separate order of deferred adjudication for each of the four counts in cause number 23274. Because Briggle asserts the same argument as to each count, we will refer to counts one through four collectively.

substance and/or alcohol." The original order of deferred adjudication was subsequently modified. On April 15, 2010, the trial court entered an order modifying Briggle's conditions of community supervision to add a condition requiring her to pay $542.50 in attorney fees, to be paid at a rate of $20.00 per month. On November 15, 2012, the trial court entered a second order modifying Briggle's community supervision adding a condition requiring her to complete an alcohol and drug abuse assessment and a condition requiring her to complete alcohol and drug counseling.

On December 4, 2012, the State filed a motion to proceed to adjudication alleging that Briggle violated the terms and conditions of her community supervision when she failed to avoid the use of drugs and alcohol. Specifically, the State alleged that

> [Briggle] admitted use [of] and tested positive for marijuana on October 9, 2012[.] [Briggle] tested positive for cocaine on October 9, 2012[,] and signed [an] admission on November 9, 2012[,] to cocaine use. [Briggle] tested positive on November 9, 2012[,] to alcohol use and admitted to using marijuana on October 31, 2012. [Briggle] tested positive on November 26, 2012[,] for alcohol and benzodiazepines."

In addition, the State alleged that Briggle violated the modified terms and conditions when she failed to complete alcohol and drug counseling.

Without making a finding of guilt, the trial court entered a third order modifying Briggle's conditions of community supervision on January 9, 2013. The trial court extended Briggle's community supervision for a period of two years, resulting in an expiration date of February 17, 2015. In addition, the trial court ordered that "as an alternative to imprisonment," Briggle's community supervision be modified to include a term not to exceed twenty-four months in the

3

Bowie County Women's Recovery Center (the Women's Center).[2]  While there, Briggle was required to comply with the facility's rules and any treatment recommendations that the staff deemed appropriate.  On June 6, 2014, the trial court entered a fourth order modifying Briggle's conditions of community supervision by ordering her to pay attorney fees in the amount of $807.50, to be paid at a rate of $25.00 per month.

On December 9, 2014, the State filed its second motion to proceed to adjudication of guilt alleging, among other things, that Briggle had again violated her supervision conditions when she admitted to using methamphetamine.  On February 17, 2015, the trial court held a hearing on the State's motion.  Briggle pled "not true" to each of the State's allegations against her.  Following the hearing, the trial court found the State's allegations to be true and adjudicated Briggle guilty of four counts of forgery of a financial instrument.  The trial court then sentenced her to twenty-four months' incarceration on each count, with all four sentences to run concurrently.  Once again, the trial court suspended Briggle's sentence and placed her on community supervision for a period of three years.  The trial court also entered a "special condition of community supervision" requiring Briggle to attend and successfully complete a substance abuse treatment program at a Substance Abuse Felony Punishment Facility (SAFPF) for not less than three months or more than one year.  This appeal followed.

---

[2]Briggle was a resident of the Women's Center from February 2013 until April 2014.

## II.     Standard of Review

We review a trial court's decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision—for an abuse of discretion. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West Supp. 2014); *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)); *see In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). In a revocation hearing, the trial court is the sole trier of the facts and determines the credibility of the witnesses and the weight given to their testimony. *T.R.S.*, 115 S.W.3d at 321. A trial court's decision to revoke community supervision and to proceed to adjudication is examined in the light most favorable to the trial court's judgment. *Id.*

The State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). Proof by a preponderance of the evidence as to any *one* of the alleged violations is sufficient to support a trial court's decision to revoke community supervision. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980).

**III.    The Trial Court Did Not Abuse its Discretion When it Revoked Briggle's Community Supervision and Adjudicated her Guilt**

**A.    Briggle's Argument**

In her sole issue, Briggle maintains that the trial court erred when it based its decision to revoke her community supervision on unobjected-to hearsay. Specifically, Briggle points to the testimony of Kelly Thrasher, the community supervision officer who testified about Briggle's alleged violations. Briggle contends that much of Thrasher's testimony was unreliable hearsay and that it varied from the allegations in the State's motion. Briggle also points to State's Exhibit 1, which is a memorialization of Briggle's admission that she used methamphetamine. Briggle maintains State's Exhibit 1 was not properly authenticated as required by Rule 803(6) of the Texas Rules of Evidence and that it is, therefore, inadmissible hearsay.[3] *See* TEX. R. EVID. 803(6). In addition, Briggle contends that the admission of State's Exhibit 1 also violated Rule 805 of the Texas Rules of Evidence. *See* TEX. R. EVID. 805. Despite the fact that State's Exhibit 1 was admitted without objection, Briggle argues that the trial court erred when it based its decision to revoke her community supervision on Thrasher's testimony and State's Exhibit 1.

**B.    The Evidence**

The State alleged that Briggle (1) failed to report to her community supervision officer for the month of October 2014, (2) failed to avoid the use of alcohol, marihuana, or any dangerous drug, (3) failed to pay her community supervision fees for the months of September through

---

[3]The Texas Rules of Evidence were amended by orders of the Texas Supreme Court and Court of Criminal Appeals, effective April 1, 2015. Those Rules quoted in this opinion are the Rules in effect at the time of the trial of this case. To facilitate access to the text of the Rules in effect at the time of trial, we note that those Rules first appeared in volume sixty of the Texas Bar Journal, beginning on page 1129. *See* 60 TEX. B.J. 1129 (1997).

November 2014, (4) failed to make her monthly attorney fee payments for the months of January through June 2014 and August through November 2014, and (5) failed to make her monthly court cost payments for the months of August through November 2014.

In support of the allegations in its motion, the State relied on Thrasher's testimony and State's Exhibit 1.

### 1.    Failure to Report in October 2014

Thrasher was assigned to supervise Briggle in January 2013.  Thrasher initially testified that Briggle failed to report to her in October 2014.  When questioned further, Thrasher realized that she had made a mistake and that Briggle failed to report in November 2014, not October 2014.  Briggle objected to the trial court considering her failure to report in November 2014 because the State did not allege the correct month in its motion.  In response to Briggle's objection, the trial court stated, "Well, if this [community supervision] were to be revoked, I want to hear this testimony."  Shortly after making that statement, the trial court informed Briggle that it would *not* consider her failure to report in November 2014 as a basis for revoking her community supervision.

### 2.    Failure to Abstain from the use of Drugs and Alcohol

Following Briggle's return from the Women's Center, she received "after-care" from the Pierce & Agnew Treatment Center (the Treatment Center).  During her time at the Treatment Center, Briggle attended Alcoholics Anonymous and Narcotics Anonymous meetings.  On one occasion, Thrasher visited the Treatment Center to obtain a urine sample from Briggle for a random drug test.  Prior to giving the sample, Briggle admitted that she had relapsed on July 4, 2014, when

7

she used methamphetamine. Briggle signed a document verifying that she had used the drug. The State introduced the document as State's Exhibit 1, and the trial court admitted it without objection.

### 3.      Failure to Pay Community Supervision Fees

Thrasher testified that Briggle had failed to pay her community supervision fees for the months of September, October, and November 2014, in the total amount of $55.00. She later testified, however, that Briggle's monthly supervision fee was $25.00, resulting in a total arrearage of $75.00, not $55.00.

### 4.      Failure to Pay Attorney Fees

Thrasher testified that Briggle was behind on her attorney fee payments in the amount of $364.50. Thrasher later testified that the trial court had ordered Briggle to pay attorney fees in the amount of $807.50 and that she had failed to pay the required $25.00 per month for nine months. Thrasher then agreed that Briggle was delinquent in paying her attorney fees in the amount of $225.00, not $364.50.

### 5.      Failure to Pay Court Costs

Thrasher testified that Briggle failed to pay her court costs in the amount of $40.00.

Following some confusion regarding the total amount of fees Briggle had paid while on community supervision, Thrasher eventually testified that Briggle had paid $1,740.00 in supervision fees alone; however, when she included Briggle's payments for attorney fees and courts costs, she determined that Briggle had paid approximately $3,600.00 in fees and costs. Despite the variance in her testimony regarding the *amount* of money Briggle owed in fees and

8

costs, Thrasher emphasized that the *months* alleged in the State's motion were correct and that those were the dates on which Briggle failed to pay her fees and costs.

Thrasher believed that Briggle's community supervision should be revoked (and not modified again) because she had been to a treatment rehabilitation program financed by the State and then continued to use drugs. Thrasher testified,

> [The State has] [g]iven [Briggle] the opportunity to receive probably about $80,000 worth of treatment, that the State pays for, and then she comes out and continues to use the methamphetamine that got her in trouble the first time, I cannot understand why she would -- I just would never recommend that she be granted probation.

Moreover, Thrasher declined to recommend to the trial court that it modify Briggle's community supervision and send her to a more structured rehabilitation program. When asked if she thought a more structured rehabilitation program would benefit Briggle, Thrasher responded, "At this point I do not because we've already spent a lot of money on her rehabilitation and it doesn't seem to have helped." During cross-examination of Thrasher, Briggle questioned her regarding the fact that she had informed her after-care counselor of her drug use prior to submitting to the drug screen that came back positive for methamphetamine. Briggle maintained that her voluntary confession to her counselor demonstrated that she was "doing the best she could in rehab."

In addition, Thrasher testified that Briggle was capable of working, capable of paying her community supervision fees, capable of reporting to her community supervision officer, and capable of "not using meth." When considering all of the allegations against Briggle, Thrasher believed that Briggle's main issue was her continued drug use.

9

Briggle presented her mother—Jamie Barton—and one other witness—Tamara Bean, an occupational health manager at Salas Minor Emergency Center—to testify on her behalf. Barton, testified that when Briggle completed her rehabilitation, she moved into Barton's residence for approximately one to two months. Barton stated that she took Briggle "job hunting every day." Briggle sought employment at "Golden Chic," "Wal-Mart, Brookshire's, Kroger's, Taco Bell," and "the unemployment office." According to Barton, she assisted Briggle with her employment efforts "for a week solid and then it was every other day." Barton did not have documentation evidencing Briggle's attempts to find employment. To Barton's knowledge, Briggle's efforts were unsuccessful. Barton believed that Briggle was capable of working and that she had no physical or mental problems that would prevent her from working. Barton was aware of Briggle's methamphetamine "problem." Barton stated that Briggle did not have a rent payment or a car payment and that as far as Barton knew, Briggle did not own a cell phone. Barton was unaware that Briggle had used methamphetamine after she was released from the Women's Center. Likewise, Barton was unaware of what Briggle did every day other than when she took her to look for a job.

On January 11, 2015, one of Bean's employees administered a basic drug screen on Briggle.[4] The drug screen tested for ten different types of drugs, including methamphetamine. The drug screen revealed that Briggle had not been using any of the ten included drugs.

After hearing the evidence, the trial court found that Briggle had violated the condition of her community supervision that required her to avoid the use of dangerous drugs. The trial court

[4]The drug screen was administered approximately six weeks prior to the hearing.

10

based its decision solely on Briggle's written admission that she had used methamphetamine on July 4, 2014 (State's Exhibit 1).

### C. Analysis

Here, Briggle contends that the evidence is insufficient to show that she violated the terms of her community supervision because the trial court considered hearsay evidence when it made its decision. Briggle makes her argument as it relates to all of the allegations in the State's motion to proceed to adjudication. Because the trial court revoked Briggle's deferred adjudication community supervision based on the sole finding that she admitted to using methamphetamine, this Court finds that it is unnecessary to address the sufficiency of proof as to the remaining allegations in the State's motion.

As to the allegation that Briggle failed to avoid dangerous drugs, Briggle contends that the signed admission of drug use (State's Exhibit 1) "came from the records of [Pierce] and Agnew" while she was attending the after-care program. Briggle argues that Exhibit 1 was not properly authenticated pursuant to Rule 803(6) of the Texas Rules of Evidence.[5] Although Thrasher testified that the document was kept in the normal course of business, a verification of the chain

---

[5]Rule 803 lists exceptions to the hearsay rule when the availability of the declarant is immaterial. Rule 803(6), "Records of Regularly Conducted Activity," states:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

TEX. R. EVID. 803(6).

of custody notation (presumably relating to Briggle's urine sample) was not initialed by Briggle. Thus, Briggle maintains that notwithstanding Thrasher's generalized testimony, the facts do not establish that the record was properly authenticated as a business record, and therefore the document was hearsay.[6] Briggle also contends that State's Exhibit 1 was hearsay because it violated Rule 805 of the Texas Rules of Evidence.[7] Briggle does not deny, however, that at the time the State offered the document into evidence, she made no objection.

First, even assuming State's Exhibit 1 contained hearsay and that the trial court relied upon the exhibit when it made its decision to revoke Briggle's community supervision, State's Exhibit 1 was admitted without objection. To preserve error for review on appeal, a defendant must object timely and specifically and pursue the objection to a ruling by the trial court. TEX. R. APP. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). Further, the objecting party must object each time the objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999). Because Briggle failed to object to the introduction of State's Exhibit 1, we find that she waived any complaint on appeal regarding its introduction.

---

[6]Briggle argues that later during the hearing, the State agreed that State's Exhibit 1 contained hearsay. Our reading of the hearing transcript reflects something entirely different. The State commented, "Judge, I mean if [Briggle] wants to admit hearsay on [her] side[,] we're going to turn around and offer it on our side." "I have no problem if [Briggle] told her counselor that she did [use methamphetamine] and then she admitted it to her probation officer later. That's fine." At the time the State made its comment, it was referring to an e-mail that Thrasher received from Briggle's counselor on July 9, 2014, prior to Thrasher visiting Briggle at the Treatment Center. Further, it was Briggle, not the State, who offered the counselor's e-mail into evidence in an attempt to "show [she had] been doing the best she could in rehab." Contrary to Briggle's assertion, the State did not agree that State's Exhibit 1 was hearsay, only that the e-mail sent to Thrasher from the counselor at the Treatment Center was hearsay. The trial court did not base its determination to revoke Briggle's community supervision on the counselor's e-mail. Consequently, it carries little, if any, weight on the issue before this Court.

[7]Rule 805 states, "Hearsay included in hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." TEX. R. EVID. 805.

Briggle contends that even if she failed to object to State's Exhibit 1, the trial court erred when it considered the exhibit for purposes of revoking her community supervision and finding her guilty of forgery of a financial instrument. In support of her contention, Briggle cites *Frazier v. State* for the proposition that unobjected-to hearsay cannot be the basis for a community supervision revocation. *See Frazier v. State*, 600 S.W.2d 271 (Tex. Crim. App. 1979). In *Frazier*, the trial court placed appellant on community supervision for the offense of aggravated assault on a police officer. *Id*. at 272. The State eventually filed a motion to revoke Frazier's community supervision alleging that he had violated his community supervision by failing to report to his community supervision officer, failing to pay a fine, and failing to pay his community supervision fee. *Id.*

At the hearing on the motion to revoke, Craig Valashek, assistant community supervision officer for the county, was the sole witness. Valashek testified that Frazier's community supervision officer was unavailable that day and that the district attorney had asked him to familiarize himself with Frazier's file in order to present evidence at the hearing. *Id.* Valashek testified that from his review of the file, Frazier had failed to adhere to the conditions of his community supervision. *Id.* Appellant did not object to Valashek's testimony as being hearsay. In addition, although the documents in the file may have been admissible as business records, the State did not offer them into evidence. *Id.* Because Valashek's testimony was the only evidence the State introduced to show Frazier violated the conditions of his community supervision, the Court of Criminal Appeals held that the trial court abused its discretion when it revoked Frazier's community supervision. *Id.* The State filed a motion for rehearing, however, and the Court of

13

Criminal Appeals reversed its original decision holding "that testimony admitted without objection at a [community supervision] revocation hearing has probative value and may constitute sufficient evidence in support of an order revoking [community supervision]." *Id.* at 275.

The State argues, and we agree, that the trial court may consider unobjected-to hearsay just as it would consider any other evidence. Hearsay evidence is not admissible in a community supervision revocation proceeding. *Johnson v. State*, 498 S.W.2d 198, 200 (Tex. Crim. App. 1973). But, when hearsay evidence is admitted without proper objection during a community supervision revocation hearing, it has probative value. *Fernandez v. State*, 805 S.W.2d 451, 457 n.1 (Tex. Crim. App. 1991) (Baird, J., concurring). "Hearsay evidence is not admissible except as provided by our evidentiary rules or by statute." *Dunn v. State*, 125 S.W.3d 610, 613–14 (Tex. App.—Texarkana 2003, no pet.). Rule 802 of the Texas Rules of Evidence states, "Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay." TEX. R. EVID. 802. The trial court may consider the unobjected-to hearsay testimony no differently than other testimony to support its decision. *Fernandez*, 805 S.W.2d at 455–56. Because Briggle did not object to the introduction of State's Exhibit 1, it is not necessary for this Court to delve into an analysis as to whether or not State's Exhibit 1 was impermissible hearsay evidence. The trial court was well within its discretion to consider State's Exhibit 1, whether impermissible hearsay evidence or not, when making its decision to revoke Briggle's deferred adjudication community supervision.

Moreover, a defendant's voluntary confession to violating the terms of his or her community supervision is, by itself, sufficient evidence to support a trial court's decision to revoke

14

community supervision. *See Wade v. State*, 83 S.W.3d 835, 839–40 (Tex. App.—Texarkana 2002, no pet.) (defendant's confession to failing to pay fines and fees, without explanation of inability to pay, was sufficient to support trial court's decision to revoke community supervision). Proof of a single violation is sufficient to support a trial court's decision to revoke community supervision. *Myers v. State*, 780 S.W.2d 441, 445 (Tex. App.—Texarkana 1989, pet. ref'd). Here, Briggle admitted, by way of a signed written document, that she used methamphetamine on July 4, 2014, in violation of one of the conditions of her community supervision.

Viewing the evidence in the light most favorable to the trial court's ruling and recognizing that the State need only prove Briggle violated *one* of the conditions of her community supervision, we find the trial court did not abuse its discretion when it revoked Briggle's community supervision and found her guilty of four counts of forgery of a financial instrument. We overrule Briggle's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: July 7, 2015
Date Decided: September 25, 2015

Do Not Publish